*19-23311*

**Micera, John (RBC Wealth Mgmt)**

9/3/19

To the United States Bankruptcy Court

To Whom this may concern:

I have submitted my proof of claim and a copy of the verified complaint against Brian and Lauren Conlon and Triton Pools. I have received a copy of the bankruptcy claim and plan. I object to the plan due the debtor's acts of fraud and theft by deception. I personally lost over $65,000 due to Brian Conlon's acts of fraud and I feel the bankruptcy proposed plan is inadequate.

I have also included a copy of my pool contract and cancelled checks ( a cash payment and 2 checks totaled $65,000).

It should also be noted that due to so many individuals being victimized by Brian Conlon and his company ,Triton Pools, my complaint has been forward to the Morris County prosecutor's office and there is now an ongoing investigation.

I would like to request that the debtor's plan not be confirmed and would request that it be dismissed.

I have included a SASE – please send me a filed copy.

Thank you for your attention to this matter.

Sincerely

John Micera

Monica Micera

**DONNELLY MINTER & KELLY, LLC**
Patrick J. Galligan (0277311996)
163 Madison Avenue, Suite 320
Morristown, New Jersey 07960
(973) 200-6400
Attorneys for Plaintiffs,
Jill Kohner, Paul Kohner, John Micera, Monica Micera, Melissa Lui, and Sammy Lui

| | |
|---|---|
| JILL KOHNER, PAUL KOHNER, JOHN MICERA, MONICA MICERA, MELISSA LUI and SAMMY LUI, <br><br> Plaintiffs, <br><br> v. <br><br> TRITON POOLS, INC., BRIAN CONLON, HEATHER DEVENUTO, JOHN AND JANE DOES 1–20, and ABC COMPANIES 1–20, <br><br> Defendants. | SUPERIOR COURT OF NEW JERSEY CHANCERY DIVISION: MORRIS COUNTY DOCKET NO.: <br><br><br> Civil Action <br><br> **VERIFIED COMPLAINT** |

Plaintiffs Jill and Paul Kohner, residing at 9 Magnolia Court, Succasunna, New Jersey, Monica and John Micera, residing at 20 Spring Hill Rd., Mendham, New Jersey, and Melissa and Sammy Lui, residing at 35 Stratton Dr., Wayne, New Jersey (collectively, "Plaintiffs"), by way of Verified Complaint against the above-named Defendants (collectively, "Defendants"), hereby say:

## PARTIES

1.      Plaintiff Jill Kohner is an individual residing at 9 Magnolia Court, Succasunna, New Jersey.

2.      Plaintiff Paul Kohner is an individual residing at 9 Magnolia Court, Succasunna, New Jersey.

3.      Plaintiff John Micera is an individual residing at 20 Spring Hill Rd., Mendham, New Jersey.

4.    Plaintiff Monica Micera is an individual residing at 20 Spring Hill Rd., Mendham, New Jersey.

5.    Plaintiff Melissa Lui is an individual residing at 35 Stratton Dr., Wayne, New Jersey.

6.    Plaintiff Sammy Lui is an individual residing at 35 Stratton Dr., Wayne, New Jersey.

7.    Upon information and belief, Defendant Triton Pools, Inc. ("Triton"), is a New Jersey corporation with its principal place of business at 165 Route 46 West, Rockaway, New Jersey 07866.

8.    Upon information and belief, Defendant Brian Conlon ("Conlon") is an individual residing at 6 Darlington Dr., Rockaway, New Jersey 07866.

9.    Upon information and belief, Defendant Heather Devenuto ("Devenuto") is an individual residing in the State of New Jersey.

10.    Defendants John and Jane Does 1–10 and ABC Companies 1–10 are individuals and entities, respectively, who participated in or furthered the wrongful acts described herein.

11.    Defendants John and Jane Does 11–20 and ABC Companies 11–20 are individuals and entities, respectively, who received or otherwise benefitted from the funds fraudulently and improperly taken from the Plaintiffs by the Defendants.

## FACTS

*Background*

12.    Triton is operated by Defendant Conlon.

13.    Upon information and belief, Triton was registered with the State of New Jersey on January 26, 2009.

14.     Upon information and belief, the registered agent, incorporator, and owner of the company was Devenuto. (See Home Improvement Contractors Registration annexed hereto as **Exhibit A.**)

15.     Devenuto is therefore named in this action as a nominal defendant only based on her apparent ownership of the company.

16.     Triton holds itself out as "New Jersey's Premier Pool Design, Construction and Poolscape Company." (See Contract annexed hereto as **Exhibit B**, at 1.)

17.     Upon information and belief, Conlon previously owned and/or operated two other pool companies that failed and filed for bankruptcy.

18.     Plaintiffs contracted with Triton for the construction and installation of in-ground swimming pools.

*The Kohners' Experience*

19.     Plaintiffs Jill and Paul Kohner (collectively, the "Kohners") contracted with Triton in or around September 13, 2018, for the construction of a wheelchair-accessible pool to accommodate one of their children who has special needs and does not ambulate. (See Contract annexed hereto as **Exhibit B**).

20.     The contract provided for the construction of a modified free form gunite pool. (Ibid.)

21.     Among other items, the contract provided for a quartz upgrade finish and the installation of an 1,800 paver patio. (See id. at 1)

22.     The contract also provided for three weeks of pool maintenance. (See id. at 2, ¶ 11.)

23.    The contract stated that the project would begin in "fall 2018" and would be completed in "app[roximately] 5 weeks." (See id. at 2, ¶ 1.)

24.    The contract price was $119,000.00. (See id. at 1.)

25.    Triton started work on the Kohners' pool on or about October 10, 2018.

26.    Over the months that followed, Triton not only failed to fulfill its contractual obligations, but it (and Conlon) also employed fraud and deceit in an effort to prevent or delay the Kohners from terminating the contract and seeking a refund of their money or compensation for the damage caused by Triton.

27.    By way of example only, on December 9, 2018, the Kohners met with Conlon and Peter Ramm, a Triton employee, to discuss the project, including the schedule (which had already been missed) and the Kohners' concern that they were being taken advantage of financially.

28.    At that meeting, Triton represented to the Kohners that they would perform certain tasks and provided the Kohners with a schedule for performing those tasks including removal of debris, final grading with all trenches and open excavations to be backfilled, plumbing and electric to be completed and pool equipment connected.

29.    Triton thereafter failed to perform the work and failed to comply with the schedule agreed to on December 9, 2018.

30.    This issue was raised with Brain Conlon by Paul Kohner in an e-mail on December 20, 2018. (See E-mail annexed hereto as **Exhibit C**).

31.    Defendant Conlon responded that same day in an e-mail promising to forward an expense report to show that the Kohners were not being taken advantage of. (See E-mail annexed hereto as **Exhibit D**.)

32.    The expense report was not provided.

33.    In that same email, Conlon indicated that he would "guarantee the completion of your project before May 15, or I will refund 100%." (Ibid.)

34.    Shortly thereafter, on December 20, 2018, Conlon sent another e-mail stating that he had spoken with his attorney and "because of the threat to refund the entire project which would bankrupt my company, he has demanded that the project be put on hold until further notice." (See E-mail annexed hereto as **Exhibit E.**)

35.    In response to this threat, Paul Kohner e-mailed Conlon and indicated there must have been a misunderstanding.

36.    On December 23, 2018, Paul Kohner e-mailed Conlon to request the aforementioned expense report in advance of a meeting scheduled for December 27, 2018. (See E-mail annexed hereto as **Exhibit F.**).

37.    Conlon responded with a promise to provide a spreadsheet and stated that he "would follow up with receipts and reports when my bookkeeper gets in on the 2nd." (Ibid.)

38.    The Kohners did not receive the spreadsheet, receipts, or reports.

39.    Another meeting occurred between the Kohners and Conlon on January 12, 2019.

40.    As a result of that meeting, Conlon again represented that the entire project would be completed by May 15, 2019. (See E-mail annexed hereto as **Exhibit G.**)

41.    Conlon also represented that Triton would reseal the Kohner's driveway and pay for damages caused to the Kohner's irrigation system. (Ibid.)

42.    Relying upon Conlon's representations, the Kohners continued with the project.

43.    In March 2019, there were several unsuccessful efforts to schedule meetings with Conlon to address the progress (or lack thereof) on the project.

44.    On March 18, 2019, Conlon emailed the Kohners and indicated that "we haven't placed another project in front of [the Kohners] in timing or importance." (See E-mail annexed hereto as **Exhibit H.**)

45.    Conlon also indicated that "we will finalize the last revision of product and footprint, order and deliver the material, and get started." (Ibid.)

46.    Later in March 2019, the Kohners agreed to a contract amendment calling for an additional $12,900.00 in material costs.

47.    This amendment is reflected in a draft document that was never signed. (See Contract Amendment annexed hereto as **Exhibit I.**[1])

48.    Thereafter, Conlon advised the Kohners that all the materials for the project had been delivered, which induced them to make a $27,000.00 payment on April 12, 2019.

49.    The Kohners subsequently learned that only a portion of the necessary materials had been delivered.

50.    On May 15, 2019, Conlon indicated in an e-mail to Paul Kohner that he had experienced some health issues related to anxiety, and he acknowledged that the May 15, 2019 deadline had not been met. (See E-mail annexed hereto as **Exhibit J.**)

51.    Thereafter, Conlon did not communicate with the Kohners other than one communication in June to cancel a meeting which was scheduled through a Triton employee.

52.    Triton and Conlon did not complete the project.

53.    Furthermore, Triton removed and did not replace the back steps at the Kohners' home, which included a wheelchair lift for their child.

---

[1] The Kohners verbally agreed to Paragraph 1(a) of the draft Contract Amendment (for "additional patio and other hardscape material"), but they ultimately did not agree to Paragraph 1(b) (for an outdoor kitchen). The additional material charges can be found in the scheduled $27,900.00 payment "upon delivery of materials," which is $12,900.00 higher than the $15,000.00 payment required in the original contract.

54.    Based on Conlon's representations regarding completion of the project and the completion date, the Kohners provided payments in the amount of $108,117.00 — approximately 91% of the original contract price.

55.    The Kohners have terminated their contract with Triton and have been advised by other pool contractors that it will cost approximately $106,000.000 to complete the project.

56.    On June 14, 2019, the Kohners were informed a Triton crew would be at their home on June 17, 2019, and would remain on the job until it was completed.

57.    On June 17, 2019, when the promised crew did not show up at the Kohners, Jill Kohner reached out to a Triton employee.

58.    The Triton employee informed Ms. Kohner that Conlon "walked away from Triton," and no one would be finishing the job.

59.    Thereafter, Ms. Kohner was informed that Triton employees were not paid for their recent work.

*The Miceras' Experience*

60.    Plaintiffs John and Monica Micera (the "Miceras") entered into a contract with Triton on October 18, 2018. (See Contract annexed hereto as **Exhibit K.**)

61.    The contract was for the construction of a pool and hardscape work at a house located in Lavallette, New Jersey.

62.    As part of the contract price, Conlon also agreed to provide additional landscaping in the front yard and a new paver driveway. (See id. at 1.)

63.    The contract provided that work would begin in the "fall 2018" and would be completed in "app[roximately] five weeks." (See id. at 3, ¶ 3.)

64.    Conlon also induced John Micera to pay the full contract price *in advance* by offering a reduced price and representing that he wanted to use the money to purchase the property where Triton's office was located because the landlord was going through a "messy divorce" and Conlon needed to "show the bank more revenue to qualify for a better interest rate." (See E-mail annexed hereto as **Exhibit L.**)

65.    Upon information and belief, neither Conlon nor Triton ever made any such purchase.

66.    Based upon Conlon's representations, the Miceras paid the total contract price before the work ever began.

67.    Despite the Miceras' advance payments of the full contract price, Triton did not complete the project and, as with the Kohners, made numerous misrepresentations to induce the Miceras' quiescence.

68.    For example, between November 2018 and April 2019, Conlon repeatedly represented to John Micera that the contract work would be completed by Memorial Day 2019.

69.    During that time, Conlon continually misrepresented that work was progressing and asked John Micera to select material required for the work.

70.    Upon information and belief, Triton did not purchase the represented materials for the Miceras' project.

71.    The work remains incomplete and, on or about May, 22, 2019, Conlon stopped communicating with John Micera altogether about the project.

72.    At that point, John Micera attempted to obtain information from Triton employees regarding the project status.

73.    In May 2019, the Miceras learned that the work had been started without permits, and that the rebar layout for the pool had been placed too close to the home, which resulted in a failed inspection from the municipality.  (See E-mail and Photographs annexed hereto as **Exhibit M.**)

74.    Conlon never informed the Miceras about these defects or the failed inspection.

75.    Furthermore, the work that was done caused additional damage to the Miceras' property, including damage to their fence and driveway.  (See ibid.)

76.    At some point in June 2019, John Micera was contacted by a Triton employee who informed him that Conlon "was closing the doors" for Triton.

77.    As a result of Conlon and Triton's actions, the Miceras cancelled the contract and have begun the process of retaining a surveyor and replacement contractor to complete the work for which Triton already accepted payment.

*The Luis' Experience*

78.    On October 23, 2017, Plaintiff Melissa Lui (collectively with Plaintiff Sammy Lui, the "Luis") signed a contract with Triton for the installation of a custom gunite pool and hardscaping in the amount of $192,750.00 and $86,600.00 for decking.  (See Contract annexed hereto as **Exhibit N.**)

79.    A deposit in the amount of $7,046.25 was provided to Triton on October 30, 2017.

80.    In order to secure payments totaling $103,500.00, Conlon led the Luis to believe permits were in place and ready for pickup during the week of November 15, 2017.

81.    The Luis provided the requested payments and Triton began the demolition and pool construction process.

82.    In December 2017 and January 2018, the Luis received a series of notices from the Township of Wayne related to the pool project.

83.    More specifically, the Luis received a Notice and Order of Penalty, a Stop Construction Order, and a Notice of Violation and Order to Terminate.

84.    The basis for the notices was that despite Conlon's representations to the contrary, permits were not obtained.

85.    As a result, construction was stopped between December 2017 and December 2018.

86.    During that time, equipment and pipes were left exposed and warranties on equipment were impacted.

87.    Additional costs were also incurred to redesign the plans to comply with the Township of Wayne requirements.

88.    In June 2018, Triton admitted to starting work without a valid pool permit.

89.    At some point, due to an alleged mistake on Triton's part in estimating labor and material, the Luis were informed that the decking work could not be performed by Triton at the original price of $86,600.00 and would instead be subcontracted to C. Verblaauw and Sons, LLC ("Verblaauw") at a total cost of $208,000.00.

90.    On May 2, 2019, the Luis were contacted by the Township of Wayne and informed that there was no valid deck permit on file.

91.    The Luis were also informed that the deck permit documents provided by Triton were falsified, and that it appeared the unapproved deck permit was superimposed over the existing pool permit.

92. As a result, Verlaauw was required to apply for an obtain new permits for the completion of the deck.

93. The Luis provided payments totaling $139,546.25 between October 2017 and December 24, 2018.

94. The Luis have been informed that they will incur additional costs of approximately $120,000.00 to complete the work.

*Continued Evasion by Triton*

95. On June 24 and 25, 2019, claim letters were sent to Triton and Conlon on behalf of the Kohners and Micera, respectively.

96. Conlon responded in a series of four e-mails.

97. In the first, Conlon stated, in relevant part: "Triton is bankrupt . . . You can not [sic] pursue me personally[.] Do not even try[.]" (See E-mail annexed hereto as **Exhibit O.**)

98. In the second, Conlon encouraged Plaintiffs to sue a separate contractor and stated, in relevant part: "I'm broke, bankrupt, homeless. . . . Triton is done. Don't waste your attorney fees[.] I am done[.]" (See E-mail annexed hereto as **Exhibit P.**)

99. In the third, Conlon again encouraged Plaintiffs to sue a separate contractor. (See E-mail annexed hereto as **Exhibit Q.**)

100. In the fourth, Conlon stated that Triton would "be filing bankruptcy and closing its doors," and he directed Plaintiffs to forward future correspondence to his bankruptcy attorney. (See E-mail annexed hereto as **Exhibit R.**)

101. Upon information and belief, Conlon recently transferred the title to his home to his wife, then back to the both of them as a married couple. (See Deeds annexed hereto as **Exhibits S and T.**)

102.    Market-value consideration was not provided for either transfer.  (See ibid.)

103.    Upon information and belief, Conlon has already started operating a new pool company under a new name KPC Build & Design.

104.    Upon information and belief, this new company was founded using assets taken from Triton.

## COUNT ONE
### (Breach of Contract)

103.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

104.    Triton entered into contracts with the Plaintiffs for the provision of services and materials related to the construction of Plaintiffs' pool projects.

105.    Triton breached the contracts by failing to perform the work contracted for and wrongfully retaining Plaintiffs' funds.

106.    Triton also breached the contracts by failing to perform what work was performed in a workmanlike manner.

## COUNT TWO
### (Promissory Estoppel)

107.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length therein.

108.    Defendants made clear and definite promises related to the work to be performed and completed for the Plaintiffs.

109.    Defendants should have reasonably expected that the Plaintiffs would rely upon the promises.

110.    As such, Defendants are bound by the promises made and are liable for the damages incurred by the Plaintiffs for their reasonable reliance on Triton and Conlon's promises.

-12-

## COUNT THREE
(Misrepresentation/Fraud)

111.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

112.    Defendants made numerous misrepresentations to the Plaintiffs, including but not limited to, what work would be performed in exchange for payments both before and during the pool construction projects, the time within which the work would be completed, additional work and services would be provided, and the reasons for the need payment in full by Micera and advances by the Kohners.

113.    Defendants failed to disclose that the work being performed for the Plaintiffs could not be completed and, in some cases, had been performed improperly.

114.    All of these misrepresentations and omissions were intended to induce the Plaintiffs' reliance.

115.    Defendants knew or had reason to believe these representations were false at the time all or some of the representations were made.

116.    Plaintiffs reasonably relied on the representations in connection with payments made to Triton.

117.    As a result of this reliance, Plaintiffs have sustained damages.

## COUNT FOUR
(Consumer Fraud)

118.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

119.    As described above, Defendants used fraud, deception, and unconscionable commercial practices in connection with the aforementioned projects, including but not limited

to the use of misrepresentations and omissions wrongfully intended to induce enter into contracts and made payments.

120.    As a result of these wrongful acts, Plaintiffs have sustained an ascertainable loss and have been compelled to incur the counsel fees and expenses associated with this action.

## COUNT FIVE
(Conversion)

121.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

122.    Defendants took funds from the Plaintiffs for specific, enumerated purposes.

123.    Upon information and belief, Defendants have retained the funds provided by the Plaintiffs instead of using them for their designated purposes.

## COUNT SIX
(Fraudulent Transfers pursuant to N.J.S.A. 25:2-20, *et seq.*)

124.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

125.    Upon information and belief, at the time Plaintiffs' claims were first asserted, Defendants had sufficient assets to satisfy its obligations to creditors in the ordinary course of business.

126.    Upon information and belief, Defendants have dissipated their assets and are today virtually insolvent.

127.    Upon information and belief, Defendants have intentionally and in bad faith transferred their assets with the actual intent to hinder, delay, and defraud their creditors, including the Plaintiffs.

128.    Upon information and belief, at the time of the aforementioned transfer or dissipation, Defendants were engaged in or about to engage in a business or transaction for which their remaining assets were unreasonably small in relation to the business or transaction.

129.    Upon information and belief, at the time of the aforementioned transfer or dissipation, Defendants intended to incur, or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

130.    Upon information and belief, Defendants John and Jane Does 11–20 and ABC Companies 11–20 have been the recipients of these bad-faith transfers.

131.    As a result of these transfers, Plaintiffs have sustained substantial damages.

### COUNT SEVEN
(Unjust Enrichment)

132.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

133.    As set forth above, Defendants secured payments from the Plaintiffs through wrongful and unconscionable conduct, including but not limited to fraudulent misrepresentations and omissions.

134.    It would be manifestly unjust to permit Defendants to retain the fruits of these misdeeds.

### COUNT EIGHT
(Alter Ego)

135.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

136.    Upon information and belief, Defendants used the corporate form of Triton as an "alter ego" to evade their lawful obligations, including reimbursement and compensation owed to the Plaintiffs in this matter.

137.    Upon information and belief, Defendants have failed to properly distinguish between corporate and personal properly and have knowingly, willfully, and maliciously diverted Triton's corporate assets among other individuals and entities.

138.    As a result of these actions, Defendants have rendered Triton unable to satisfy its debts, including but not limited to Plaintiffs' claims for reimbursement and damages.

139.    This misconduct has caused the Plaintiffs to sustain damages.

## COUNT NINE
(Successor Liability)

140.    Plaintiffs hereby restate and incorporate by reference the allegations above as though set forth at length herein.

141.    Upon information and belief, Defendants ABC Companies 11–20 are successors-in-interest to Triton for all intents and purposes.

142.    Upon information and belief, Defendants ABC Companies 11–20 merely continued Triton's business following the latter's closure.

143.    Upon information and belief, Defendants ABC Companies 11–20 utilized equipment and assets formerly belonging to Triton, continued to employ the same personnel as Triton, and serviced the same customers as Triton.

144.    As successors-in-interest to Triton, ABC Companies 11–20 are liable for Triton's obligations, including but not limited to the claims presently asserted by the Plaintiffs.

**WHEREFORE**, Plaintiffs request judgment:

(a) Imposing a constructive trust over or equitable lien upon the funds paid to Triton by Plaintiffs and any items purchased using those funds, including but not limited to equipment;

(b) Restraining Defendants from transferring or dissipating any assets subject to the constructive trust;

(c) Compelling an accounting of the funds paid to Triton by Plaintiffs and the manner in which those funds were used;

(d) Awarding compensatory and punitive damages, statutory penalties, counsel fees, costs of suit, and any other appropriate monetary relief; and

(e) Granting any other legal or equitable relief this Court deems just and appropriate.

## DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Patrick J. Galligan, Esq., as trial counsel in this matter.

## CERTIFICATION PURSUANT TO RULE 1:38-7(c)(2)

I certify that confidential personal identifiers have been redacted from documents now submitted to the Court and will be redacted from subsequent papers submitted to the Court.

## CERTIFICATION PURSUANT TO RULE 4:5-1

I hereby certify that, to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor is any other action or arbitration proceeding contemplated at this time. I further certify that I am not presently aware of any other known parties who should be joined in this action, although Plaintiffs reserve the right to add additional individuals and entities identified herein as fictitious parties.

I certify that the foregoing statements made by me pursuant to Rules 1:38-7 and 4:5-1 are true. I am aware that if these statements are willfully false, I am subject to punishment.

**DONNELLY MINTER & KELLY, LLC**
Attorneys for Plaintiffs,
Jill Kohner, Paul Kohner, John Micera,
Monica Micera, Melissa Lui, and Sammy
Lui

By: _____
PATRICK G. GALLIGAN

Dated: July 5, 2019

### VERIFICATION OF PLAINTIFFS

We, Jill Kohner, Paul Kohner, John Micera, Monica Micera, Melissa Lui, and Sammy Lui verify to the best of our individual personal knowledge that the statements and allegations included in this Verified Complaint are true. We are aware that if any of the foregoing statements of which each of us has individual personal knowledge are willfully false, we may be subject to punishment.

_____
JILL KOHNER

_____
PAUL KOHNER

_____
JOHN MICERA

_____
MONICA MICERA

_____
MELISSA LUI

_____
SAMMY LUI

Dated: July      , 2019

## VERIFICATION OF PLAINTIFFS

We, Jill Kohner, Paul Kohner, John Micera, Monica Micera, Melissa Lui, and Sammy Lui verify to the best of our individual personal knowledge that the statements and allegations included in this Verified Complaint are true. We are aware that if any of the foregoing statements of which each of us has individual personal knowledge are willfully false, we may be subject to punishment.

_____
JILL KOHNER

_____
PAUL KOHNER

_____
JOHN MICERA

_____
MONICA MICERA

_____
MELISSA LUI

_____
SAMMY LUI

Dated: July _3_, 2019

-19-

## VERIFICATION OF PLAINTIFFS

We, Jill Kohner, Paul Kohner, John Micera, Monica Micera, Melissa Lui, and Sammy Lui verify to the best of our individual personal knowledge that the statements and allegations included in this Verified Complaint are true.   We are aware that if any of the foregoing statements of which each of us has individual personal knowledge are willfully false, we may be subject to punishment.

_____
JILL KOHNER

_____
PAUL KOHNER

_____
JOHN MICERA

_____
MONICA MICERA

_____
MELISSA LUI

_____
SAMMY LUI

Dated: July 3, 2019

-18-

## <u>VERIFICATION OF PLAINTIFFS</u>

We, Jill Kohner, Paul Kohner, John Micera, Monica Micera, Melissa Lui, and Sammy Lui verify to the best of our individual personal knowledge that the statements and allegations included in this Verified Complaint are true.   We are aware that if any of the foregoing statements of which each of us has individual personal knowledge are willfully false, we may be subject to punishment.

_____
JILL KOHNER

_____
PAUL KOHNER

_____
JOHN MICERA

_____
MONICA MICERA

_____
MELISSA LUI

_____
SAMMY LUI

Dated: July 3 , 2019

-18-

# Triton Pools, Inc

Tel. 973-794-1233
Fax: (973) 306-3080
www.Triton-Pools.com

165 Rt. 46 West
Rockaway, NJ 07866

NJ License/Registration/Certification # 13VH05227800

## New Jersey's Premier Pool Design, Construction and Poolscape Company

### POOL CONTRACT

| Purchaser: John Micera |
|---|
| Address: 10 Camden |
| City, State: Lavallette, NJ |
| Phone: 908-963-4931 |
| proposal date- 10/06/2018 |
| Email: johnmicera@aol.com |

Store Location

| Pool Size: App. 216sf, 18'X12' | Pool Shape: Exercise pool/rectangular | Pool Shell: Gunite | Total package $65,000 |
|---|---|---|---|

The following are standard items included on this project exclusively:

Install Interior- Quartz finish/tile of choice
coordinate all inspections for all contractors
Brian Conlon and Rich Damato to manage project
Start Filter System- balance chemicals per plaster instructions
Triton to balance and maintain pool for 3 weeks
System Orientation with Client
Lifetime Warranty on pool shell

| | |
|---|---|
| Obtain Construction Permits- Triton to pay cost | |
| Sealed drawing for town | |
| Layout Pool Site per final design | |
| Construction of Pool-rebar/gravel/ gunite/tile/plaster | |
| Filtration Equipment- Jandy by Zodiac | |
| All electrical included- see notes below | |
| Gas for heater included | |

| | |
|---|---|
| Jandy Filtration System by Zodiac. Jandy is the leading manufacture in pool equipment with a full 3yr parts and labor warranty. | |
| Jandy- DEV 60sf DE filter, Jandy 1.5 HP Flo Pro pump | |
| Jandy Never Lube valves-lifetime warranty | |
| Jandy Fusion Mineral System | |
| 400,000 btu Jandy JXi heater gas line included | |
| LED color lights in pool | |
| All excavation and site work prior to excavation | |
| Jandy ½" cage with ¾" gravel base | |
| benches and steps per design | |
| 5000 psi gunite shell with lifetime warranty | |
| auto water fill in pool to regulate pool water | |
| Pools drain to act as a "push" when heater on | |
| all electrical hook up | |
| quartz upgrade finish/ tile of choice | |
| Pool to have 2 skimmers/ 3 returns | |
| stone may be needed to be brought in | |
| Wireless controls for pool and all features included | |

| Additional items included | |
|---|---|
| Small sun bench per clients design. | included |
| *LEO light Bubblers* | |
| Relocate air conditioners | Included |
| 10LED landscape lighting-see below | Included |
| Entire pool raised out of grade- 18" | See below- included |
| Polaris 360 auto cleaner | Included |
| Soil export | Included |
| Restore disturbed areas of property | Included |
| Coping- Portofino Teco bloc | Included |
| Modify existing Trex deck | Included |
| Relocate existing spa with electric | Included |
| Install paver patio under fire pit | Included |
| Install new brick paver driveway | Included |
| 7 HP swim jet in deep end | Included($3,800 value) |
| Step from paver into pool | See below- Included |
| Landscape in front yard/spa area | Included |
| Paver patio between pool and patio and shallow end next to house | Included |
| Electric cover with a "stone lid" application including gunite cover box and all electric | Included |
| Irrigation drip system | |

| | Package Cost |
|---|---|
| | $65,000 |

Quartz upgraded finish is included. A "Wet Edge" Lunar Quartz quartz pool finish upgrade offers an Admixture that is formulated with German engineered polymers, increases durability, and strength, fortifies cement for superior bonding, contains Pozzolans, polymers, and acti-plex. This quartz upgrade is included in base cost.

Raised bond beam — The entire pool to be raised by app. 18" out of grade. The veneer will be a custom stone. Approximately 60 lf. with stone veneer. Certain veneer do not apply in this cost.

Exercise feature- The deep end of the pool will have a swim jet. This swim jet cluster will be powered by a 7HP commercial performance pump. A "dump line" will be installed to throttle back the water pressure.

Jandy Aqualink RS8 system to control all features from electronic devise.

Fence to be removed and reinstalled after completion

Value of installing the new driveway -$3,800

The wall on the far side is to be thicker than 12". It will be 24". This will allow the skimmers and LED lights to be installed into this wall. The coping will be 24" for the entire 18' length of pool. Design to follow

Landscape lighting- up to 10 low voltage fixtures that will be tied into pools automation system. Suggested are scuppers under coping on outside of pool.

✓ Trex deck will have to be lifted to gain access for utility lines going to pool. All restoration to reinstall when done is included.

✓ Winter safety cover included

All hardscape and landscape designed and built by Triton Pools.

- ○ Gas piping for gas heater included.
- ○ Rewiring of the spa included
- ○ Rebuild existing trex deck to fit into current design is included
- ○ Landscaping in front of house included

Please note-

*"Thank you for choosing Triton Pools"*

*Morris County's voted #1 pool company '08-'18*

**Triton Pools, Inc**
165 rt. 46
Rockaway, NJ 07866
www.Triton-Pools.com
pspools@aol.com

NJ License/Registration/Certification # 13VH05227800

## New Jersey's Premier Pool Design, Construction and Poolscape Company

### IN GROUND POOL CONSTRUCTION CONTRACT - Part 2

**Purchaser:** John Micera
**Address:** 10 Camden
**City, State:** Lavallette, NJ
**Phone:** 908-963-4931
proposal date- 10/06/2018
**Email:** johnmicera@aol.com

*Homeowner:*

The contract price is based upon the following mutual assumption of facts: the site must have adequate bearing capacity, and be free from fill ground, buried debris, underground hazards, unstable soil, hard soil, rocky soil, rock formations, rock ledge, boulders, underground water conditions, surface water conditions or trapped water conditions and that access to the site is adequate for construction equipment.

Pool to be built from the designs of Triton Pools- Hunter Bannon

Project commencement and completion dates are estimates only. Start date- fall 2018- completion- app. 5 weeks. Weather permitting. Plaster early spring of '19

Deposits required to schedule work by contractor are non-refundable.

Grading, QP compaction, back fill of any trenches, top soil import included

Electric Installation is included

Export of soil included

Gas hook up is included

If Homeowner request water trucks, Homeowner to pay cost.

Purchaser shall be responsible for all costs associated with additional work required to fill voids left in pool floor after excavation due to poor soil conditions, rock, debris, or unsuitable soil that may affect the integrity of the shell. Gunite @ $300/yd will be used if gravel cannot. N/A

Triton Pools to provide 3 weeks of pool maintenance from the day the pool is plastered. After the 3 weeks, client can request Triton Pool to continue service to be billed at the end of each month. Spring of 2019

Purchaser shall be responsible for all costs associated with blasting, jack hammering, chipping, or splitting of rock and remediation of unstable soil and remediation of underground water conditions, surface water conditions or trapped water conditions, whether subsurface, known or unknown, at the signing of this contract as these items are not included in this contract and require an addendum. N/A

This contract does not include items provided under separate agreement by others, such as: Grading, walls, drainage, *drywells*, dirt removal, dirt filling, site preparation, compacting, *tree removal*, *stump removal*, pool coping, pool decking, patios or sidewalks, waterfalls, steps, plant material, topsoil, grass, mulch, exterior lighting, fencing, pool house or any other items except those specifically detailed in the contract documents. Only items in bold pertain to this contract.

Triton Pools is not responsible for damage done to purchaser's property whether known, unknown, or subsurface that could be damaged during the work and includes but is not limited to trees, shrubs, grass, irrigation system, sidewalks, patios and driveways. N/A

This contract binds the agreement items from page 1 of the contract.

Triton Pools is not responsible for any negligent acts by other contractors working on site unless they are a direct sub contractor of Triton Pools. N/A

**NOTES:**

Materials that need to be decided in order of priority: coping, veneer stone for side of raised pool, pavers for around pool and under fire pit, pavers for driveway, tile and plaster for interior of pool, planting materials.

---

**Schedule of installments:**
Payment arrangement with client has been agreed upon
Payment in full prior to starting project. Details to be
discussed during upcoming meeting on Sunday October
21"

This contract is subject to the written acceptance of an
authorized office of the company. Purchaser deposit shall be
immediately returned if not accepted.

Accepted by Contractor

Name: _____     Date _____

Brian Conlon- President, Triton Pools Inc     10/18/2018
Name                                          Date

**TOTAL CONTRACT: $65,000**

Accepted by Purchaser

Name _____     Date _____

I agree I have read and fully understand the payment schedule and
that this order, including GENERAL TERMS AND CONDITIONS
printed on reverse side hereof, which I have read and to which I
agree, constitutes the entire agreement relating to sale of said
property, and that I have received a true copy thereof.

NOTICE TO CONSUMER
YOU MAY CANCEL THIS CONTRACT AT ANY TIME BEFORE MIDNIGHT OF THE THIRD BUSINESS DAY AFTER
RECEIVING A COPY OF THIS CONTRACT. IF YOU WISH TO CANCEL THIS CONTRACT, YOU MUST EITHER: 1. SEND A
SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION BY REGISTERED OR CERTIFIED MAIL, RETURN
RECEIPT REQUESTED; OR 2. PERSONALLY DELIVER A SIGNED AND DATED WRITTEN NOTICE OF CANCELLATION
TO:    Triton Pools, Inc
       165 Rt. 46 West
       Rockaway, NJ 07866

973-794-1233

If you cancel this contract within the three-day period, you are entitled to a full refund of your money. Refunds must be made within 30 days of the contractor's receipt of the cancellation notice.

*Thank you for allowing Triton Pools to design and Build your Backyard Paradise*